I'd like to reserve five minutes please. May it please the court, my name is Scott Calvert and I represent plaintiff and appellant Selena Bryant. There are a number of things that District Court Judge Klausner got right in this case. He agreed that the extrinsic evidence proved that Cigna received a claim from the hospital following Miss Bryant's accident. He agreed that Miss Bryant achieved some success on the merits. He also found that there was no showing that plaintiff unnecessarily protracted litigation. He also ruled that Miss Bryant satisfied four of the five homofactors and was therefore entitled to attorney's fees. Unfortunately there are a number of things that Judge Klausner also got wrong. He, without sufficient explanation required by United States Supreme Court cases and cases from this court, drastically cut Miss Bryant's attorney's fees by approximately 72 percent. This violated the Supreme Court's instruction in Hensley which required a quote clear and concise, I'm sorry, a concise but clear explanation for the reasons for its fee award. For the underlying case, District Court essentially said, well not essentially, District Court ruled that Miss Bryant was not entitled to any attorney's fees beyond March 21st 2011, the date that Cigna informed, Cigna's counsel informed Miss Bryant's counsel that it intended to pay the hospital. Not that it paid the hospital, that it intended to pay the hospital. The hospital of course was the entity that was, that it sent collection agencies after Miss Bryant. So on that date, while Cigna indicated that they would pay the claim, Miss Bryant didn't have any indication from the hospital that it would stop coming after her for the money. Judge Klausner's... Well, didn't all that Cigna did in that pre-trial meeting was say, it agreed it should pay. Correct. But it hadn't paid. That's correct, Your Honor. So they said they, they said they would pay but they hadn't paid. Judge Klausner cited the McElwain case to say that no fees were recoverable after that date because the dispute was effectively resolved. However, the dispute was not resolved on that date. One more question, pardon me for interrupting you. At the time that they said they should pay, didn't they also say, but we don't abandon the position that a proper claim has not been filed? That's correct, Your Honor. In an email sent from plaintiff's counsel, sorry, which is in the record in a declaration, they said that a multitude of issues remain to be resolved. In addition to the issues that the plaintiff had said remained unresolved, a multitude of other issues remain to be resolved, including specifically whether Cigna had received a claim to begin with. So Cigna said that the litigation needed to continue because a determination needed to be made as to whether Cigna had in fact received a claim. And to that end, discovery was conducted. Discovery that Cigna did not object to, discovery that Cigna fully participated in, including producing a witness and documents to, a witness and documents to discuss the documents regarding whether. So when you notice the deposition of a witness after this pretrial meeting, did Cigna seek a protective order on the grounds that the issues as to which the witness could testify were not any longer an issue? No. To the contrary, Your Honor. They produced a witness, a Cigna produced their own PMK to testify as to the, what the document said and whether the documents indicated that Cigna had in fact received a claim. So quite the contrary, they never moved for a protective order, a motion to quash, nothing of that resort. They fully participated in the discovery and the plaintiff did not conduct wild amounts of discovery in an attempt to increase attorney's fees. We conducted very pointed discovery. We did a PMK deposition of Cigna to see, to have them testify as to what the records showed they received and a PMK deposition of the hospital administrator so they could testify as to what their records said. That's all. There is no indication that plaintiff in some sort of, has been alleged by Cigna, you know, did a lot of extra work in order to do fees. That's not correct. We did discovery because they said the issue of whether a claim was received was open, so we did discovery to try to prove that. Go ahead. It categorized the reductions. We know that there's a reduction, was it March 30th? Is that the right? A reduction by saying anything after the date, which I think was March 30th, but I can't find it in my notes. Twenty-one, Your Honor. Twenty? No fees for that, because the case was over then. We also know there are reductions for work on issues that were perceived by the district court as being unsuccessful. Are there other generic categories of reduction as you view the case? Well, yes. I'm just trying to get a catalog of what we're talking about here. No, I understand, Your Honor. So for the underlying case, yes, the court set a deadline that of the filing of the Rule 26 report, nothing after that in the underlying case was compensable. Judge Klosner refused to order. Okay. So that's the first category. What's the next category? So the second category is the time spent on appeal. So after Judge Klosner issued a ruling that went against Ms. Bryant, she, we appealed this case to the Ninth Circuit. And so those fees, because Ms. Bryant prevailed and the issue was remanded to Judge Klosner for him to consider the extrinsic evidence that was considered on discovery, Judge Klosner cut the appellate fees, the fees just for the Ninth Circuit, by two thirds. And he had, he had two. And that was because you were taking the position that Cigna couldn't settle the at a discount and pay the hospital directly. They had to pay $88,000 directly to you, regardless whether they settled the hospital bill. And therefore, Ms. Bryant would be released. And the that position that you had a right to get $88,000 in cash was found to be unmeritorious, correct? That is correct, Your Honor, that. What was wrong with cutting that fee? You didn't prevail on that issue. Well, because the case law says that you don't have, you don't only get compensated for the cases, excuse me, for the issues on which you prevail, you get compensated for all of your. Let me read you the quote that you gave us in the opening brief. The fee award should not be, this is from a case, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative grounds for a desired outcome. He didn't turn you down for making alternative arguments for an outcome you got. He turned you down for making arguments for an outcome you didn't get. The $80,000 claim, you never succeeded on that. So he said you shouldn't be paid for that part. And that's not simply an alternative ground. That's an entirely different aspiration, which wasn't achieved. Well, except for the $80,000 was not the only issue that was litigated at the Ninth Circuit. And he didn't say zero on appeal. That's correct, Your Honor. But why is there a reduction for the claim that you pursued unsuccessfully appropriate? Well, one, the work can't be, it's not like, the work can't be, he has no basis to argue that. It's an entirely different argument. The question of whether they can pay the hospital directly or have to pay you is not the same thing as on the claim you prevailed. I understand what I'm saying is that he has no basis and he offered no explanation for saying you spent $88,000 on this particular issue or you spent $80,000 or whatever the exact cut was on this particular issue. You sent this amount of money on this particular issue and so I'm going to cut that fee. He didn't do that. He just estimated an amount and said I'm going to cut one third of your fees because you didn't prevail on this issue. Did you tell him what portion of your time was spent on the unsuccessful issue? Well, that's not, with all due respect, Your Honor, that's not the way the briefing works. We're required to spend time working on the entire brief. And that was part of the argument. And why should you be paid for the part that didn't pan out? Because it's not an alternative ground to a desired outcome. It's a different outcome and you didn't get it. But, Your Honor, part of the problem or part of the issue is on conviction. The big problem is they kind of, through a curve ball, instead of dealing through you, they dealt directly with the person who Ms. Bright owed the money, reached a settlement, and that cause of action was gone. Yes, Your Honor, but that's, we didn't continue, that did happen, but to answer your question, to answer your question regarding the brief, it's not like, so the Ninth Circuit had a lot of different arguments. And for the judge to just carve out a particular amount of money because he, he didn't even say this, but I guess he estimated that that's the amount we spend on a losing argument, that basis is not offered anywhere. When you write a brief, you work on everything and, you know, you're not required to and it's not how it's normally done to say that. And you haven't offered up any basis, so what else can he do but to make the kind of estimate that he made? Your hourly report doesn't segregate how much time is spent on each issue. He can't make that calculation based on what you gave him. The thing is that we're allowed and we're required to vigorously advocate on the court. And the court is not required to pay you for the part that wasn't successful. And you haven't given the wherewithal to decide how much time was spent on the unsuccessful part. Let me start with, take it in pieces. Do you contest the proposition that the court doesn't have to award you attorney's fees for the claim that was unsuccessful? Yes. Okay. And based on what? Because the quote I just read from you from your brief doesn't support you. Well, the fact that, well, two things. The court is supposed to look more closely at appellate fees so you can, you know, cast an eye towards that. The second is that, you know, again, for contingency fee cases, and, you know, plaintiffs or attorneys are required to vigorously advocate on behalf of their You're not commissioned to overreach. And if that happens, then attorneys are going to make the most outlandish claims possible and pile up time and say, but we won something and it's all in the same brief, so pay me for the whole thing. That's not going to happen. Okay, Your Honor, but there was no evidence that we overreached. Losing is not necessarily overreaching. But you don't get paid for what you lose on, do you? You can. Frankly, I think the hospital claim was pretty overreaching. There's no sign that it had any, it was getting any traction with anybody. So why should the court pay you for that? Well, because that's not always how it works. As Judge Ferris noted, a lot of times in these cases, the insurance company pays the hospital, I'm sorry, the insurance company pays the plaintiff and the plaintiff deals with the hospital because the hospital is the one that's sent collections agencies after them. I would like to reserve the rest of my time. Okay. Good morning, and may it please the Court, William Donovan on behalf of Connecticut General Life Insurance Company. Your Honors, we agree wholeheartedly with the concerns you've been raising with opposing counsel concerning... Well, we have some concerns with your position, too. Well, I'm sure you do, Your Honor, but the law is clear in this circuit. In the McElwain case that we cited, that the district court cited, that once they were aware, which they were no later than March 21, 2011, that the claim would be paid, they should have submitted a fee application, and this court now for a second time, the district court and respectfully Cigna, should not have had to litigate for five years over spurious arguments, every one they lost on the merits, plus the fee claim should be limited as the district court properly found... Did it say we're going to pay the hospital bill? Did it say we're also going to pay the attorney's fees for what's been accumulated to date? There were discussions with plaintiff's counsel about paying them a reasonable fee, and much more than we at a bigger firm had billed on this matter, and they basically told us to drop dead. It's not that the McElwain case is new... Did you make an offer to allow the plaintiff to take judgment for his attorney's fees and provide a release from the hospital? We did make an offer of judgment to pay an amount of... Under Rule 68? There were settlement discussions that I'm not sure qualified under Rule 68, Your Honor, but... That's why I... Pardon me. The offer of judgment's a term of art. Correct, yes. We did not make a Rule 68 offer of judgment, Your Honor. There were settlement discussions among the parties in which they refused to entertain any reasonable resolution of this matter, and then as the record... And the record that tells us as of the March date that plaintiff was assured not only that the hospital would be paid or had been paid, but that the attorney's fees accrued to that point would be paid as well. Your Honor, we think the standard under McElwain, which has been the law of... I think the answer to that question is no. We didn't know what their fees were. We tried in good faith to negotiate a resolution of the fee issue promptly. We did not want to continue to litigate this case. We had no incentive to continue to litigate this case. But you did. You said, we should pay the bill, but we retain the option to claim that the claim was A, never received, or B, if received, not done in proper form. Your Honor, we attempted to reach a settlement of the claim. They refused. Once they refused... But at that point in time, you didn't acknowledge that, in fact, the plaintiff's hospital bill had been given to the insurance company and lost, misplaced, whatever, not paid. So the notion that plaintiff's attorney's fees would be taken care of, I really don't see anything indication that that communication was made to plaintiff, at least nothing in the record. Your Honor, under McElwain, we believe the operative standard in this circuit has been for a long time, that once a plaintiff is aware that the claim will be paid, at that time, they should make a fee submission. They didn't share our bills with us. We had no idea what bills they had racked up. We offered them, in good faith, a multiple of what our firm had billed on the case to try to resolve it, and they told us to drop dead. And then what they did was they persisted making numerous arguments, as Your Honors have acknowledged, and the first time we were at the circuit, the panel acknowledged, they lost every single one. They claimed we had violated a statute. They lost. They claimed that we had engaged in conduct. The court properly found that the statute of limitations had passed. They made this double recovery argument that borderlined on being frivolous, and both the district court and the Ninth Circuit rejected the argument. Given the facts of this case, we believe that the district court's award is reasonable, and it should be affirmed, and there's no abuse of discretion. The court should remember that Judge Klausner ruled that it was astounding, the conduct that plaintiff's counsel engaged in, which resulted in the litigation having to be filed. They sent a letter to Cigna and said, please send us the file on Selina Bryant. No date of service. No other details that would allow Cigna to process the claim before the litigation is filed, which was, of course, the intent of ERISA. Cigna sent a response begging them for information. They ignored it. They waited 10 months, and they filed a suit. What did Cigna do as soon as the suit was filed? They promptly researched the claim, adjudicated the claim, paid the claim, and got Ms. Bryant released five years ago. Five years ago, all that was done, and the response from the other side... Well, certainly you did what you just said, but prior to that, the hospital had had to garnish your wages, had done quite a lot to try to collect a bill that was owing and unpaid. Now, isn't that what the record shows? No one wishes that anything had happened to Ms. Bryant, and we never sought a penny from Ms. Bryant in fees. Our view was that counsel had overreached, had continued this case for years, and therefore, they should be responsible for some of our fee. There has been... And the district court declined to award you any fees. And I've got to say, pursuing that issue on appeal doesn't make you and your client look any better. Your Honor, they filed the appeal. We filed a cross-appeal to keep the matter in play. We would have paid the amount of the district court judgment and not burdened Your Honors or us or the client. We don't mind the burden. It's a part of our job. Fair enough, Your Honor. But look, I want to address the issue about the claim, because this has taken on a life of its own. We don't have to put our lawyer hats on or our judge hats on, because we've all been in the health care system. The hospital, if it submits a claim to Cigna or any other insurance company, does so electronically or in paper form, they have a record of that claim. There was never a claim produced in this case by the hospital. Never. Never. If there is a denial of a claim or processing of the claim... How did you find out about the claim and about the hospital? You did some research after 10 months of silence? After the complaint was filed with details as to the date of service and where Ms. Bryant was treated, Cigna proactively contacted the hospital before discovery, before any of that, resolved the claim and got her released. But there has been this misperception that somehow Cigna would be the only one that would have information to prove a claim was filed, and that's simply not true. Wasn't there a letter sent to you saying, pay the hospital this amount of money? There is nothing, there's no claim or demand from the hospital in the record. What about Ms. Bryant? The letter that Judge Klausner properly found was astounding, was a letter from plaintiff's counsel's firm to Cigna saying, we represent Selena Bryant, please send us her file. Please send us what? Her file. Without a date of service, a patient number, the hospital name, there were none of those details. In the record, there's a letter back from Cigna expressing complete confusion as to what this was about, asking for the details that they would have needed to process the claim. So it is a truism that the claim wasn't paid until after the litigation is filed. But the district court, the first time around, and certainly our position was that if plaintiff's counsel had been vigorous, if they had fulfilled minimal obligations to just give us a date of service. If on March 21st, 2011, Cigna recognized that it should pay the claim, that it would pay the claim. Yes. Why did you preserve the issue as to whether the claim was ever received and whether the claim was in proper form? Is that for a bad faith defense? Yes, because we had attempted again in good faith to resolve the claim, paying them a lot more than our firm billed on this matter, and they told us to drop dead. So reserving our right because it was clear based upon very aggressive emails from the other side that they were going to pursue this forever, that we wanted to reserve our rights, which we think was entirely appropriate to do under the circumstances. We all know the purpose of ERISA is to avoid litigation. This thing never should have gotten to court the first time, let alone get to the Ninth Circuit twice. But Your Honor, to get back to your question specifically about the claim, right? The hospital never produced it. They produced some ledger, basically a checklist with the wrong number on it, and that's all that's been produced ever in this case to suggest that Cigna made a mistake and that a claim actually had been filed. The hospital didn't produce a claim. If there had been adjudication of that claim, as we all know, we as the member, plus the insurance company and the hospital, would have paperwork regarding the adjudication of the claim. They never were able to produce it. Ms. Bryant didn't have it. The hospital didn't have it. So we strongly believed and continue to believe that the error in the judgment below is the conclusion that Cigna received a claim when there's not, in our view, a scrap of evidentiary record to support that. And we all know, based on our own experiences in the healthcare system, that multiple people would have evidence of the claim. So, Your Honors, respectfully, the district court properly found their conduct was astounding, not good astounding, but bad astounding, which resulted in this case being filed. When we were here last time, the panel was very vigorous in pointing out to Plaintiff's Council that the argument that there should be some double recovery was completely out of bounds. What we were disappointed by was on remand, based on when we were here last time, we thought that the panel was actually very interested in getting a full and fair adjudication of our argument that, in fact, there was bad faith on the other side, so that there should be an award against the lawyers, not Ms. Bryant, of course, for prolonging this litigation and burdening all of us. The district court on remand found that they were unreasonable, found that their fees were unreasonable. We never got the opportunity to make the case, number one, on the claim issue and point out what I just did to you. There was a summary ruling, and we never got the chance to make the argument that why have they been litigating for five years when we took care of Ms. Bryant? And respectfully, Cigna stepped up and took care of Ms. Bryant within a very short period of time after they finally had the information to adjudicate the claim. This is not bad faith by the insurance company. This is not an insurance company. Well, that's not if you had the information. I mean, if you didn't have the information. But if you did have the information and acted like you didn't, then you got a different set of facts. You're correct, Your Honor. And we believe the Ninth Circuit the last time around already agreed with us, and Judge Klausner agreed with us as well. So we're not, at this point, five years after resolving this claim, even though we think that they're getting too much money, they should get nothing, we should have the right to pursue our claim at the district court, we would be satisfied with an affirmance to finally put this matter to rest. But we would also ask Your Honors to consider, while we think it would be inconsistent with the terms of justice, the intent of ERISA, and why this statutory regime exists, to give them anything close to what they've asked for. Page 9 of our brief outlines some of the excesses. There are many of them. But McElwain says when the meter stops running, and as Your Honors pointed out to opposing counsel, if they're going to continue to press ahead with arguments that lack merit, they shouldn't be paid for it. Because if we have to pay for that, no ERISA plaintiff's counsel is going to resolve anything. Once they've got a plaintiff, they're going to keep making arguments, keep letting the case going. We're here reluctantly.  of the district court's ruling. But in summary, Your Honors, for the reasons I've talked about, and obviously you have questions, I'd be happy to- The piece that may be missing is plaintiff's attorney's fees claim for bringing to the court the evidence that was offered up with regard to notice having been given to the insurer. We've talked about there was settlement discussion. There was no offer of judgment. What gives me confidence that as of the date in March, plaintiff knew not only that the hospital bill was going to be paid, but the attorney's fees incurred to that point would be paid? Your Honor, respectfully, we think that's an issue for the district court. We tried to settle it. We did more than- The district court said zero for anything that happened after that date in March. And that's what McElwain teaches. And we think the district court was right. So my question is, what assurance did they have at that point that they weren't going to have to do anything else because the attorney's fees were going to be paid? Your Honor, I'd quote back what Judge Christin said when we were here last time. And it was echoed by the judge sitting by designation from New York. They knew, they were obligated to know under longstanding Ninth Circuit law that as of March 21, 2011, when they're told the claim is going to be paid, it's resolved, they've got to submit their fee petition. That's what they should have done. The court, in its question, is suggesting we have some huge burden when, in fact, I think we did more than we had to do. We don't have to enter into- Why was discovery later necessary in order to extract the information about what had been submitted to the insurer? Because they were pressing ahead with arguments that they ended up losing on the merits, that somehow there was this double recovery argument. We didn't need the hospital's testimony. They wanted it to somehow try to show there was this bad faith negotiation between the insurance company and the hospital to resolve the claim, when, in fact, that's what happens all the time. When did you pay the hospital? What date? It was, Your Honor, in the spring of 2011. It was right around the date- Before March 21st or after? The agreement was reached by the March 21st date that's operative under McElwain. I think the check was technically cut a short period of time after, but they submitted a joint report with knowledge that we had agreed to settle the claim, which we believe is the operative standard under McElwain. But the claim had not been paid by the time of the joint report. True? True. An agreement had been reached. A binding commitment had been reached. The claim was resolved. They agreed with the district court. It had been resolved. But, Your Honor, Judge Clifton, just to get back to your question to try to make sure I fully resolve your question, right? Under ERISA, it is not the defendant's burden to substitute itself for the role of the district court and agree to pay an amount certain in attorney's fees. What the Ninth Circuit teaches us, what the prior panel said to plaintiff's counsel, which we totally agree with, is once they know, which they did by March 21st, 2011, that the claim will be resolved, it's their burden. It's incumbent on them to submit the fee petition at that time. And that would have been hundreds of thousands of dollars ago. We then would have had the ability to respond in writing if we wanted to challenge it. The claim had, in fact, been submitted to the insurer before relevant to that fee application. At that time, I'm not sure it was because their argument has been, and it appeared that Judge Klausner agreed with the argument, that to some success on the merits was getting the fee paid, getting the claim paid. It was over by that point. So, in essence, it was to follow up on the questions you were asking opposing counsel. At what point is it unreasonable for a law firm that says they're doing this pro bono to spend what they record as hundreds of thousands of dollars of time to keep losing every substantive issue after we've agreed to pay the claim? Even if we had done a Rule 68 offer of judgment, based on what happened, based on their position, based on the fact that they keep appealing, based on the fact that we're here, even though they got a generous award after conduct the district court said was astounding and unreasonable, that that would not have resolved it, Your Honor. You know, we did not share some of the unpleasant exchanges that we got from them when we tried to resolve it, but we don't think our good actions to try to get it resolved should be used against Cigna. They stepped up. They paid the claim. They have not produced any evidence that a claim was actually submitted. They haven't produced a denial of a claim. They haven't said if all that happened that they appealed. We acted quickly. We acted professionally. We tried to put this matter to bed five years ago before this court, the prior non-circuit panel, and Judge Klausner, in addition to Cigna, would have had to spend all this time, money, and effort fighting about to the extent to which they could, in our view, gouge the system and try to get a totally unjustified award. So respectfully, Your Honors, we would ask that the district court's decision be affirmed and that this matter finally be put to rest. Thank you very much. Thank you, Your Honors, if I may. Cigna is trying to be focused on the first case and trying to relitigate the entire case, but that's not the purpose of this, and those aren't the issues before the court. Mr. Calvert, was there a claim in your complaint for bad faith refusal to honor the contract? No, Your Honor, because that's not allowed under ERISA. Under ERISA, you can just make a claim to pay the benefits. Bad faith is not a cause of action that's allowed under ERISA, so if we'd done that, that would have been properly subject to a motion to dismiss. Why didn't you file a P petition? I mean, Cigna's suggesting you should have filed a P petition sometime in the spring after you were told that the bill would be paid. We offered to, Your Honor, we suggested that as a, we suggested expedited briefing on the issue of whether or not we should have been paid and also whether or not we are entitled to attorneys fees. We made that specific offer, and that's in the record, to counsel to say, let's end it now. Let's talk about, we'll talk about expedited briefing, which included our fees. That was in March. That could have ended. They accused us of... Where is it in the record? That is at, sorry, Your Honor,  there's a multitude of issues left to be resolved. In addition to the issues that we raised, they specifically, I said that right, ER 624. They specifically said that there are, in addition to the two issues that we raised, there are a multitude of issues that they needed to be resolved, including whether or not a claim was ever received. Now, again, they continue to deny that a claim was received, even though just right now, that even though the evidence is suggestive, but that's getting far afield. That's, I don't want to relitigate this first case. Okay. Your Honor had a question as to when Ms. Bryant was finally informed that the hospital was no longer after going to collection issues. That was on June 29th. June 29th was the first date that... What year? 2011. That was the first date that the hospital informed Ms. Bryant that it was no longer going to be seeking the money from her. As to the issue of McElwain, this case is distinguishable. As we explained in the papers, on the date that the court in that case said, to use the terminology of SIGNA, the drop-dead date, there were no other issues to be resolved. The defendant in that case agreed and had reached a settlement with the IRS to pay the money that the plaintiff asked. There was no more disputes there. Here, there were disputes. There were disputes in the language, in the emails of the counsel that they said there are a multitude of issues. So McElwain does not control here, because in McElwain, there were no more issues. But in here, in their own words, there were a multitude of issues, including whether... In your own words, in your own conclusion, were there a multitude of issues? There... Well, they said... Well, so we had said... Could there possibly have been on this record? They offered... The emails... I know they said it, but I'm saying you... Counsel can review, and you know what's to be done and what's not to be done. Two things went wrong in this case, so far as your position. One is they settled with the hospital rather than paying through your firm. Well, there's nothing wrong with it. They can do that. And that made a substantial difference in your recovery, because they did what they did. But they... I gather that there's not the most affectionate feeling flowing between you and the insurance company, and they thought this was a clever thing to do, and they did it. And legally, they can do it. They can settle with the hospital and pay, and they did settle, and they did pay. After that, what was left? Well, Your Honor, that's when we offered expedited briefing on the issue of whether that issue was proper and on our fees to that date. Well, I just look... I'm looking at the reference you gave me to the excerpts of record. It seems to be a whole lot more about the payment of the insurance position as reprehensible than it was about, let's finish this, pay the fees that we've incurred to date and walk away. But where is the offer that I asked you about that you gave me this reference to? That is, that you didn't petition for fees or seek to resolve based on fees today, as opposed to maintain the litigation because you were hoping to get payment directly. So at 624, the second to last paragraph, this is an email from them. They say, aside from the issues you addressed, which is the attorney's fees issue and the issue of expedited briefing of whether they should be pay us or not. So those are the issues we addressed. They said, there are a multitude of issues related to whether your client is entitled to any relief from the court, including whether the claim was ever properly presented to Connecticut General Life Insurance Company prior to filing this lawsuit. Accordingly, any expedited briefing is not only unnecessary, but will be inappropriate at this juncture. We offered to stop the litigation in March 2011, but they said that would be inappropriate at this juncture. Well, we don't, in this place, we don't have, if you flip to the next page, which appears to be the email that this one responds to, this appears to be from your client's counsel to the insurer's counsel. And most of this is what's talking about this representable position about paying the hospital directly. So, you know, I was asking you, was there an effort at that point to wind up based on payment of your client's attorney's fees for the efforts to date? And what I'm looking at is something that suggests the fight here henceforth is going to be about paying the hospital directly, a fight that your client ultimately lost. And I haven't seen what I was really going to look for, which is a resolution at that point in time based on paying your attorney's fees. Now, I'll note that Cigna is busy denying any responsibility for paying any attorney's fees. It makes a general reference, it's offered a paid sum, but not required by law. So I don't hear a position from their side saying we're looking to wrap it up at that point in time either. But my question to you is, what is there that tells us that your client was prepared to wrap it up and instead of filing a petition for fees incurred to date, elected to do something other than what ultimately happened, which is this frolic to try to collect payment directly? I mean, it sounds to me like neither party was really trying to squarely focus on the attorney's fees to date issue and you were both engaged in fights over other issues. Well, again, Your Honor, we offered the expedited briefing. But that wasn't about attorney's fees, that was about your demand that payment be made to you directly. But that was part of it was the attorney's fees. We offered on two issues, expedited briefing on attorney's fees and the issue of whether we should be paid. I think it's important to say that Judge Klozner himself said there's no showing the plaintiff unnecessarily protracted litigation. I think that's a very important finding that this court needs to consider. There is no showing the plaintiff unnecessarily protracted this litigation. To get to the cuts that were made on the appellate brief, the court also cut one-third, in addition that you said before, could we then prevail on that issue, that the matter was not complex, but I would disagree. Also, we only received 25 hours for the fees bills, even though they required two different filings, one of 24 pages, one of 18 pages, and we had to vigorously defend against them. That cut of two-thirds was, I think, was reminiscent of the MEDAX approach. Also, they cut 75% of our fees on the final briefing. May I ask one question, Mr. Donovan? Do you agree, Mr. Donovan, that under ERISA, there can be no claim for bad faith refusal to pay a claim? I believe that's correct, Your Honor. Then why were you preserving your position as to whether a claim was received or properly filed when you had agreed to pay it? Your Honor, I think it's for the reason Judge Clifton noted when he read the actual document, that there's a disconnect between what they're saying that exchange was and what it was really about. From our perspective, they were not letting go. They were trying to manufacture other arguments to fight about, they were pursuing a double recovery issue, and that's what that email exchange is about. But that exchange also includes a statement, you offer to pay some fees, but you have no legal obligation to do so. That's a far cry from saying, let's wrap this up and file your fee petition. Your Honor. If your position is there's no legal obligation on the part of the insurer to pay the fees, why would they file a fee petition? Because that's what ERISA requires, and that's what McElwain requires. I admit it's not in the record because it was a settlement discussion as opposed to somewhat unpleasant emails between my associate and their side who were dealing directly with the issue. He didn't deny we tried to negotiate a settlement. We offered him much more than we had billed on this case. They told us to drop debt. At that point, Your Honor, there seems to be no reason for us under McElwain or any Ninth Circuit authority to say that at some date in the future, if they ever get around to it, we have to pay all their fees. So I think that was what my associate was trying to communicate, which was if you're going to continue on this frolic and detour, we're not going to agree to pay for it. And we don't think we had to pay for it. Thank you very much. Thank you. We thank both counsel for your arguments. The case just argued is submitted. We're adjourned.
judges: Farris, Clifton, Bea